BOWEN v. CAROLINA, &c., RAILWAY COMPANY.

1. APPEALABLE ERROR.—The trial judge cannot be charged with error in not requiring plaintiff to elect upon which of two causes of action stated in the complaint he would rest his case, when the record fails to show that the judge made any ruling thereon or was requested so to rule.

2. EVIDENCE—CONTRACT.—Where a railroad company contracted with a construction company to pay a sum stated to the president of the railroad company for his salary, such contract may be considered by the jury in determining an issue between a president subsequently elected

and his company as to what his salary was, but the president, not being a party to such contract, was not bound to look to the construction company alone for payment, even though he knew of the contract when he accepted the office.

3. CHARGING JURIES.—A matter not stated in the answer was introduced by defendant in evidence. The trial judge did not err in charging the jury that the defendant contended that this matter must be considered by them.

4. WRITTEN CONTRACT.—A written contract must be construed by the judge; and in this case a contract providing for the payment of certain debts was properly held, from its terms, not to include debts not then in existence.

5. CORPORATIONS—AUDIT.—The executive committee of a board of directors were without authority in this case to fix the salary of the officers of the company, and an audit by such committee of a claim for salary does not purport to do so.

6. GRATUITY—CHARGE.—The charge to the jury in this case correctly stated the law as to the right of a person to demand compensation for services intended at the time to be gratuitous.

7. CHARGING JURIES—MISSTATEMENTS.—Where the trial judge misstates the testimony in his charge, motion before him for new trial, and not appeal, is the proper remedy.

8. IBID.—FACTS.—The charge in this case was not on the facts, the particulars complained of being matters stated by way of illustration, and an isolated sentence which in its entirety was free from error.


Before HUDSON, J., Aiken, May, 1890.


This was an action by R. E. Bowen against The Carolina, Cumberland Gap & Chicago Railway Company, commenced December 16, 1889. The judge charged the jury as follows:

*Mr. Foreman and Gentlemen of the Jury:* The plaintiff, R. E. Bowen, brings this action against the Carolina, Cumberland Gap & Chicago Railroad Company to recover of that company five thousand dollars, the amount claimed to be due him for his salary as president of that road from the 27th day of November, 1887, to the 27th day of November, 1888, one year's salary. The complaint has two counts, so to speak, or causes of action. The first lays claim to this salary upon a promise—contract express; and then in the second count upon an implied contract commonly called in law books "*quantum meruit*," claiming that his services were well worth $5,000, and that the defendants are

bound in law to pay it. The answer of the defendants is that there was no contract; and in the next place his services were not worth $5,000.

It devolves upon the plaintiff to make out his case by the preponderance of evidence. In this court you are governed by a more moderate rule than in the Court of General Sessions, and you have been sitting in both courts, and in that court you cannot convict unless you are satisfied beyond a reasonable doubt, but in the Court of Common Pleas you render your verdict according to the preponderance of evidence; so that if the evidence in favor of the plaintiff is sufficient to establish his claim by preponderating over the evidence of the defendant, why, the plaintiff is entitled to a verdict.

The first question you are to determine is whether the office to which he was elected had not had affixed to it a salary of five thousand dollars. If that was the case, and he was elected to the office, if that was the contract between the parties (the company and the president), as matter of course he should be paid the salary of $5,000. If that was affixed to the office, if it was a five thousand dollars salaried office, and he was elected to fill it, and did fill it for the space of the year for which he sued, he would be entitled to recover. Well, in order to show that such was the fact, the plaintiff introduced a contract that was made before President Hagood was elected. (I believe it was before or during his term of office.) It was a contract made between the company and a construction company, The Atlantic and Northwestern Construction Company. It was signed by the railroad company as well as by the construction company. In that contract this railroad company stipulates that this Atlantic and Northwestern Construction Company is to build the entire road, and that construction company also stipulates to pay the officers' salaries of the president and officers of the company, the railroad company, and characterizes them; and the president's salary is fixed at $5,000.

Then there is evidence introduced to show that the salary of President Hagood, who served for three years, was $5,000—he so testified himself; and there is evidence to show that his salary quarterly was audited at $1,250 for one quarter, four hundred

and sixteen and something for one month : and then the testimony in regard to the payment—so much of it as was paid and so much as was not. In addition to that he has introduced the evidence that the executive committee during the presidency of Mr. Bowen audited his salary account at $5,000. It is claimed upon this testimony that five thousand dollars was the recognized compensation for the president of this company, and the company had committed itself—contracted—in this way to pay five thousand dollars to the president.

Against this the defence has introduced testimony, for instance, some testimony from President Hagood that some years he did not intend to charge, and that some of the other officers did not, and that after President Bowen went out of office, the present board disapproved of the auditing of his account for his salary of five thousand dollars ; and it is contended by the defence that he didn't intend to charge the road any fixed salary, or regular salary ; that his services were, in other words, gratuitous, and that he could not convert into a charge that which he intended as a gratuity. Now, I charge you that (and you have heard all the papers read—I cannot recite them), if you find from the testimony, written and oral, the documentary writing from the company, contracts, and so forth, if you find that to this office was attached a salary of five thousand dollars, that it was recognized by the company, then the present plaintiff is entitled to be paid for his services for one year five thousand dollars, unless there is something else to prevent him from recovering. In other words, if you find that five thousand dollars was his salary, you will have one difficulty removed.

But it is further contended by the defence that the railroad company was not responsible, because it made a contract with the Atlantic and Northwestern Construction Company to pay this salary, and therefore when the plaintiff took his office, he knew of that contract, and it was implied by his so doing that he was to look to the construction company for his salary, and not to the railroad company. I charge you that it does not absolve the railroad company from liability to its own officers. It merely binds the construction company to pay these salaries ; it creates an obligation on the part of the construction company to pay

the officers of the railroad company, and the officers, in order to be bound by that, would have to be a party to the contract, and when they took office, it would have to be made to show that they took the offices with that understanding. But the contract does not show that; it only shows that the construction company undertook to help the railroad company pay its officers, and the officers taking office afterwards would not be bound to look to it. They would really have two sources to look to, they would have the construction company to look to, and if it did not pay, they could fall back upon the railroad company, unless there was some further consideration by which they would discharge, either expressly or by implication, the railroad company from that liability to them.

Well, then, it is conceded furthermore by the defence, that the president, as a member of the executive committee, was in possession of certain assets for the purpose of paying off the floating indebtedness of the company and all the salaries that he would have a right to pay, and that he being in possession of these assets, it should be considered that he was paid. That is the substance of the contention and the object of introducing that testimony. But this testimony, so far as I remember it (your recollection must be better than mine), shows that that stipulation was made by the railroad company at the time that the contractor Potts took charge of this short end, and that it was necessary that an arrangement of that sort should be made before Potts would undertake the work, and that it only referred to the debts existing at that time, but not to any subsequently contracted, and the president's salary was a subsequent debt. Such must be the interpretation of that contract. All that stipulation of "the floating indebtedness" should be applied to the debts existing at that time and before the executing of that contract, a debt or debts then existing, so that Potts would not be interfered with, so as not to have the obligation of the company to him hampered by the existence of the floating indebtedness.

If you find that five thousand dollars was the salary contracted by the company to the president, the plaintiff here, and if you should find from the testimony that there was nothing in these other stipulations, or from the facts proven, that would deprive

him of his salary, your verdict would have to be for five thousand dollars; but if you find that there was no fixed salary, but that the plaintiff is willing to recover only what his services are worth, then you have another and different question before you, one which probably will be attended with some difficulty on your part in arriving at a correct conclusion, and that is the "*quantum meruit*" count in the complaint.

Now, in regard to that, there is evidence that the services of a railroad president are to be estimated from various circumstances, various elements entering into the services of a railroad president going to show what salary he should have. A man may be elected, and is generally elected, ought to be elected, with a view to his services to be rendered to the company in its then condition; and when he is elected president of a railroad company, the railroad of which is then only in process of construction, you have heard from the testimony its many things to look after, and you have got to take into consideration the time it is necessary, when away from home, the various matters he has to look after, the energy and zeal with which he should push the work, and the responsibility that rests upon him as the head and guide and leader of the men for the time being. All these matters are to be taken into consideration, his personal address, his standing in the country through which the road is to run, his influence, judgment, education, his experience in railroading, railroad matters, and experience in business. All these are to be taken into consideration in fixing the value of his services, and you will observe from the testimony in this case that the salaries of railroad presidents in the land are very high, much higher than the salaries of the officers of the State who are put into office by the people. There is no office in the State of South Carolina which would begin to reach the salaries of presidents of long lines of railroads. Those salaries run—I forget from the testimony what amounts are spoken of, but some are very large, and I suppose if we were correctly informed, you might find the salary of some president equal to the salary of the president of the United States. I don't pretend to tell you what, but I tell you these salaries are large, and are made so because of the great responsibility attached to the office, and the ardent, laborious, and constant duties attached

to the office, for the exercise of which, with proper energy and attention to business, it takes a great deal of his time and requires a high order of ability, executive and administrative, to fill the office ; so that if you find that the salary was not fixed by the company at five thousand dollars, you must look to the testimony as to the value of his salary to see what it ought to be, and you will take all these things into consideration, and on which side soever the preponderance of testimony is, you will find your verdict.

I will now read the requests to charge in behalf of the defence.

1. "If the jury find that the plaintiff participated in the proceedings of the executive committee on the 27th day of November, 1888, at which time the resolution fixing his salary was passed, then such resolution is null and void, and does not bind the defendant company." I charge you that my understanding of that resolution—I don't understand that the resolution fixes the salary ?

Mr. Henderson, interrupting : "It audited it."

Mr. Croft : "That is what I call fixing it. It is the only time it is mentioned in the minutes." (Mr. Croft reads the resolution beginning : "The following resolution was adopted, Resolved, that the purchase of land in the town of Edgefield, * * * the account of R. E. Bowen for salary, $5,000, from November the 27th, 1887, to November the 27th, 1888, was audited, allowed, and ordered to be paid," and so forth.)

Question by the foreman of the jury : "Who was present ?" A. "R. E. Bowen, Dr. T. G. Croft, and J. S. Cothran."

The Court, continuing : I will instruct you that that was not a making of any contract with the president by the committee, but the resolution shows merely that his account as claimed was audited and allowed, and I don't interpret this resolution to mean that that committee for the first time fixed his salary, but that he put in his claim for his salary of five thousand dollars, and they audited it and allowed it ; so that I charge you that this first proposition has no application to the case, unless you should find that it undertook to enter into a contract with him for that salary, and that he, as a member of that committee, participated and did participate. That contract under those circumstances

ought not to stand; but to audit an account, or being a member of the auditing committee, ought not to invalidate it.

2. "That the resolution of the executive committee fixing the salary of the plaintiff is not binding upon the defendant company, unless such resolution was afterwards approved by the board of directors. And if the jury find that the board of directors have not approved the action of the executive committee in passing such a resolution, then the plaintiff cannot recover upon his first cause of action." This is a sound proposition, if that was a resolution fixing the salary, or, in other words, making a contract with the president as to what his salary should be; but if the resolution which was passed there was merely the auditing of his account, then this proposition has no application.

3. "That under the by-laws of the defendant company it is the province of the board of directors to fix the salaries of the officers of the company, and no independent action of the executive committee fixing such salaries can bind the defendant company." Yes, that is correct. I don't think the executive committee, as an independent committee, would have the power outside the board of directors or meeting of the stockholders, and so forth, to fix the salary of the president, unless the board of directors would approve of it. But I have interpreted that resolution—it was merely passing upon what they recognized as his salary.

4. "Under the undisputed evidence in this case, the resolution passed by the executive committee fixing the salary of the plaintiff as president is not binding upon the defendant company." That is a correct proposition, if they did then and there fix the salary as a matter of original contract with him; but that, as I charged you, is not my interpretation.

5. "That under the contract between the defendant company and the Atlantic and Northwestern Construction Company it was agreed that the said Atlantic and Northwestern Construction Company should pay the salary of the president of the defendant company, and if the jury find that the plaintiff accepted office knowing of such agreement, he is bound to look to the said Atlantic and Northwestern Construction Company for such salary, and could not under such circumstances claim the same of the defendant."

I cannot charge that request, because, as I told you, taking that contract, standing as it does, it merely gives an officer of the company two companies to look to for his pay, the company of which he was the officer, a railroad officer, for which ultimately the railroad company was bound. The railroad company's duty would be to make the construction company pay the salary, and if it did not or could not, why, the officer should not lose his salary, and the railroad company is responsible for it, and the officer could look to it for his pay; and unless he has made a contract with the company, either expressly or by necessary implication, that he would not look to the railroad company, but would look to the Atlantic and Northwestern Construction Company, the railroad company would be responsible.

The railroad company is responsible primarily to its officers for their pay when it employs them or elects them; but the railroad company might and could, under that contract, call upon the construction company to pay its officers, and if the construction company violated its contract with the railroad company, and did not pay its officers, the officers could go upon the railroad company; and so far as the officer is concerned, there is nothing in the contract to prevent him from suing the railroad company in the first instance. That is the view I take of the contract. When President Bowen took office, if he knew of the existence of this contract, that of itself did not make him a party to it; he was not bound by it. Not at all. There would have to be some further evidence going to show that he made a further contract with the railroad company not to look to it, but to look to the construction company. If there is any evidence of that fact, you would have no trouble at all in saying, "Go to the construction company;" but you have no evidence of that fact, as I remember, but if you remember any, you can be governed by it.

6. "That if the plaintiff intended to look to the defendant for his salary for the year commencing November the 27th, 1887, then it was his duty to notify the board of directors of the defendant company of such intent, and if he failed to do so, and acted in such a manner as to lead the directors to believe that he would make no charge for such services, but would continue to serve from that time as president without compensation, as he had done

15—34

in the past, then he cannot now legally demand compensation for
such service." The request is a long one, and to be correctly,
disposed of it will have to be reviewed in detail.

"That if the plaintiff intended to look to the defendant for his
salary for the year commencing November the 27th, 1887, then
it was his duty to notify the board of directors of defendant com-
pany of such intent." Not at all. A man is not bound to notify
any board of directors that he is going to look for pay, because
this is the contract; if there is any salary fixed at all, it is the
contract when he is elected or made an officer; the contract is
implied, if not express. When he wants his pay, he is bound to
call upon them for it; and if they do not pay it, he can institute
his action.

"And if he failed to do so, and acted in such a manner as to
lead the directors to expect that he would make no charge for
such services, but would continue from that time to serve as pre-
sident without compensation, as he had done in the past, then he
cannot now legally demand compensation for such services."
Here is an assertion. I could not instruct you that "he had, in
the past" served as president gratuitously. He cannot legally
demand compensation for such services—meaning that if one un-
dertakes to render services gratuitously, that is, without compen-
sation, if he intends to make no charge, and acts in such a man-
ner as to show that he did not intend to make any claim, but
that he gave his services free, then he could not afterwards make
a charge. That is the meaning of that request, and if that be
the real meaning, that is good law; but in order to apply it to
this case, you would have to find that President Bowen entered
upon that office with the understanding that he was to get no
pay, that his services were to be gratuitous, or that he was to
perform all his services for nothing, making a gift of them, of all
his labor. And so, now, if the evidence shows that, why, after
he comes out of office he could not make any charge; but you
must find that that was his intent from the evidence.

7. "If the jury believe that the plaintiff did not intend to ex-
act compensation at the time he rendered such service, he could
not afterwards change his mind and make a charge for the same."
That is a repetition—really what is meant by the latter part of

the preceding request as I understand it, and it is good law if the jury find from the evidence that such is the fact; but, as I said, if there is no evidence to show it, then the request would have no application. The position of the defence is that the president did not intend to charge; that his services were rendered gratuitously, and that he never thought about charging till he got out of office. If that is a fact, he cannot recover; but if it is not a fact, then he is entitled to his salary.

Another thing, there is evidence as to the small earnings of the company, its straitened circumstances and inability to pay. Why, with that you have nothing to do. If you had a case against one of your fellow-citizens for a thousand dollars, and you were to sue him here in court, it would not be a good defence that he had no property, was not doing business, was not getting along well, and could not pay. That would not justify a jury in giving him a verdict. Whether the railroad company can pay or not is not the question and has nothing to do with the issue. The only thing you have to do is to say whether or not this plaintiff is entitled to the verdict. You have nothing to do with those other questions. They rest with the railroad company.

First, if you find that to his office when he took it was attached a salary of five thousand dollars by the company, fixed previously or during General Hagood's presidency, and that was the existing salary, he ought to recover his five thousand dollars, because there is no going outside of the testimony to say that he ought not to recover. If there is no fixed salary, then you have got to fix one according to what you think his services are worth. If you find that the company contracted to pay the sum of five thousand dollars, you will have to find for him five thousand dollars. If you find that the company did not contract to pay him five thousand dollars, but he was to be paid whatever his sevices were worth, fix his salary and give him whatever it is worth. If you find that he was to get nothing, you will find for the defendant. If you find for the plaintiff, say "We find for the plaintiff, so many dollars." But if you find that he is entitled to nothing and you find for the defendant, say "We find for the defendant."

Verdict was for plaintiff, and defendant appealed on the following grounds :

1st. Because his honor, the presiding judge, erred in not requiring the plaintiff, on the application of the defendant, to elect and rest his case upon one of the causes of action set forth in the complaint.

2nd. Because his honor, the presiding judge, charged the jury that in ascertaining whether the office of president of the defendant company had a fixed salary attached to such office, they were to consider the fact of the Atlantic and Northwestern Construction Company having agreed with the defendant company to pay the salary of such office at $5,000 per year, and had characterized "the president's salary as fixed at $5,000," and that the jury were also to consider that during the plaintiff's administration the executive committee had audited his salary account at $5,000. It is respectfully submitted that such charge was erroneous, for it allowed the jury to find that the defendant company was bound by the rate of salary agreed upon by the construction company, when his honor should have charged that as between the president and the railway company the salary was regulated by the by-laws of the railway company, and could only be fixed by the directors of said company.

3rd. Because his honor, the presiding judge, charged the jury that the defendant company set up as a defence that the plaintiff had received certain assets of the railway company at the making of the contract with George Potts, out of which the plaintiff was to pay the debts of the company, including the salary of the plaintiff, and that such stipulation only applied to debts existing at the date of the Potts contract. It is submitted that no such defence was made by the defendant company, and that to so charge was erroneous and was calculated to confuse and did confuse the jury, so that they found against the defendant.

4th. Because his honor, the presiding judge, erred in charging the jury that the officers of the railroad company would have two sources to look to for their salaries—first to the construction company, and if that company failed to pay the same, then such officers could fall back on the railway company. It is submitted that such charge was erroneous, for it assumed that the

railway company was bound to pay the $5,000 to the president if the construction company failed to pay. Such charge fixed $5,000 absolutely as the amount to be paid by the railway company, and made the company's liability depend solely upon the fact that the construction company had failed to meet its obligation.

5th. Because his honor, the presiding judge, charged the jury that "the salaries of railway presidents in the land are very high, much higher than the salaries of the officers of the State who are put in office by the people. There is no office in the State of South Carolina which would begin to reach the salaries of presidents of long lines of railroads. Those salaries run—I forget from the testimony what amounts are spoken of, but some are very large, and I suppose if we were correctly informed, you might find the salary of some presidents equal to the salary of the president of the United States. I don't pretend to tell you what, but I tell you their salaries are large, and are made so because of the great responsibility attached to the office, and ardent and laborious and constant duties attached to the office, for the exercise of which, with proper energy and attention to business, it takes a great deal of his time and requires a high order of ability, executive and administrative, to fill the office; so that if you find that the salary was not fixed by the company at five thousand dollars, and you must look to the testimony as to the value of his salary to see what it ought to be, then you will take all things into consideration, and on which side soever the preponderance of testimony is you will find your verdict;" and in this it is submitted that his honor erred, for such charge was upon the facts, and also upon facts which were not relevant to the issue, and was calculated to confuse, and did confuse, the jury in reaching a verdict.

6th. Because his honor, the presiding judge, erred in refusing to charge the defendant's first request, and he also erred in charging that the auditing and allowing the account of $5,000 for the president's salary by the executive committee was not fixing such salary.

7th. Because his honor, the presiding judge, erred in charging the jury that the defendant's 2nd request had no application, if

the resolution passed by the executive committee was merely
auditing the account of the plaintiff; for under the evidence in
this case the auditing of said account by the executive committee
did fix the salary of the president, and the defendant could not
be bound by such resolution until the board of directors had ap-
proved of such action by the executive committee.

8th. Because his honor, the presiding judge, while charging
the 3rd request of the defendant, annulled its force and effect by
erroneously instructing the jury that the resolution passed by
the executive committee was merely passing upon what they
recognized as the salary of the plaintiff.

9th. That while the presiding judge charged the defendant's
4th request as a correct proposition of law—he erred in instruct-
ing the jury that the resolution of the executive committee there-
in referred to did not fix the salary of the plaintiff.

10th. That his honor, the presiding judge, erred in refusing
to charge the defendant's 5th and 6th requests.

11th. That the comments of the presiding judge upon the
defendant's 7th request were calculated to confuse the jury, in
that his honor attributed a position to the defendant they never
contended for, namely, that the plaintiff did not think of charg-
ing for his services until he got out of office. The position taken
by the defendant was that the plaintiff did not intend to charge
for his services at the time they were performed, and that his
honor charged in such a manner as to lead the jury to believe
that in order to find for the defendant, they must have *express
evidence* that the plaintiff intended to serve gratuitously, and
such charge precluded the jury from arriving at such a conclu-
sion by a proper inference which would arise from the circum-
stances and the conduct of the plaintiff in this case.

12th. That it appears from the whole case, that there was no
evidence showing that a salary had been fixed to the office of
president previous to or during the administration of Gov. Ha-
good as president, and his honor erred in submitting such a
question to the jury. His honor also erred in charging the jury
that "if there is no fixed salary, then you have got to fix one
according to what you think his services are worth." Such
instruction amounted to a positive direction to the jury to find

for the plaintiff, and deprived the defendant of all chances of the jury finding in its favor.

*Messrs. Croft & Chafee*, for appellant.

*Messrs. Henderson Bros.*, contra.

June 18, 1891. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This action was brought by the plaintiff to recover the sum of five thousand dollars, alleged to be due him for his salary as president of said company from the 27th of November, 1887, to the 27th of November, 1888. In his complaint the plaintiff states as his first cause of action a special contract on the part of defendant company to pay him the said sum of money as his salary for the year mentioned, and his second cause of action is based upon a *quantum meruit*. The defendant answered, setting up as his first defence a general denial, and for a further defence alleges, that though the plaintiff was president of said company for the year mentioned in the complaint, yet that for a part of that time the railway was in the course of construction, and was not completed until November, 1888, and that plaintiff never had charge of or operated said railway, but that it was under construction by the contractor, George Potts, and that under the contract for the construction of said railway it was expressly stipulated that the Atlantic and Northwestern Construction Company was to pay the salary of the president of defendant company, and that plaintiff accepted the office of president, knowing of such stipulation, and is therefore estopped from claiming his salary from defendant company.

The records of the defendant company, the contract with the construction company, and the contract with Potts, together with the verbal testimony of witnesses taken in court and by commission, were all offered in evidence. There was also some testimony adduced by defendant, and received against the objections of plaintiff, tending to show that certain assets of the defendant company had been placed in the hands of the plaintiff for the purpose of paying off its debts at the time the contract was entered into with Potts for the construction of that portion of the

road lying between Aiken and Edgefield. The charge of his
honor, Judge Hudson, is set out in full in the "Case," and should
be embraced in the report of the case, and under that charge the
jury found a verdict in favor of the plaintiff for the full amount
of his claim, and judgment being entered thereon, the defend-
ant appeals upon the several grounds set out in the record.

The first exception imputes error to the Circuit Judge in not
requiring the plaintiff, on the application of defendant, to elect
upon which of the two causes of action stated in the com-
plaint he rested his case. To dispose of this exception,
it is sufficient to say that the "Case" as prepared for argu-
ment here fails to show that any such application was made to
the Circuit Judge. We can discover nothing in the record that
indicates that this matter was ever brought to the attention of
the judge, or that he made any ruling in reference thereto. There
is nothing, therefore, for this court as an appellate tribunal to
review.

The second and fourth exceptions may be considered together.
These two exceptions are based upon a misconception of the
judge's charge in reference to the matter therein referred
to. His honor merely called the attention of the jury to
the contract between the railway company and the con-
struction company, in which the latter had assumed the payment
of the president's salary at the rate of five thousand dollars a
year, as one of the circumstances which they might consider in
determining the question whether the railway company had
agreed to pay that salary to the plaintiff when he was elected
president; but he did not say, nor could it be implied from any-
thing he did say, that the defendant company was thereby bound
to pay that salary to the plaintiff. He did say, however, and in
this we think he was right, that the fact that the construction
company had in that contract, to which the plaintiff was not a
party, assumed the payment of the president's salary, would not
relieve the defendant company from liability therefor, provided
they had received the services of the plaintiff as president under
an agreement, either express or implied, to pay him in the one
case the amount agreed upon, or in the other the amount which
his services were reasonably worth. That contract did not bind

the plaintiff to look alone to the construction company for the payment of his salary. There was nothing in it which forbid the plaintiff from holding the defendant company liable for the salary, if any was due, in case the construction company failed to comply with its agreement with the railway company to pay the salary.

The third exception alleges error on the part of the Circuit Judge in charging the jury that the defendant company set up as a defence that the plaintiff had received certain assets of the railway company at the making of the contract with Potts, out of which the plaintiff was to pay the debts of the company, including his own salary, and that such stipulation only applied to the debts existing at the date of the Potts contract. While it is true that no such defence was set up in the answer, yet the defendant insisted, against plaintiff's objection, upon introducing testimony to that effect, which could have been for no other purpose than to show that plaintiff had been provided with means out of which he could and should have paid himself whatever was due on his salary, if anything; and all that the Circuit Judge said to the jury was, not that such a defence was set up in the answer, but that it was contended by defendant that plaintiff having been furnished with these assets, any claim that he may have had should be considered as paid; and he then went on to construe the contract, which being in writing it was his province to do, and properly held that the stipulation in that contract only related to debts then existing, and had no reference to any that might afterwards be incurred. As this Potts contract bears date 25th of November, 1887, it manifestly could have no application to the plaintiff's claim for salary from the 27th day of November, 1887, to the 27th of November, 1888. There is therefore no foundation for the third exception.

The sixth, seventh, eighth, and ninth exceptions may be considered together, as they all relate to what was said to the jury in reference to the action of the executive committee in auditing the salary of the plaintiff. We do not see that we can add anything to what was said to the jury by the Circuit Judge in reference to this matter. The jury were

distinctly told that the executive committee had no authority to fix the salary of the president, and we think it was correctly added that according to the proper construction of the resolution adopted by them, and offered in evidence from the minutes, they did not undertake to do so; and furthermore, we do not see how the defendant could have possibly been prejudiced by anything said to them on this subject.

The tenth exception imputes error to the Circuit Judge in refusing defendant's fifth and sixth requests to charge. These requests called upon the judge to instruct the jury that under the contract with the construction company, by which it assumed the payment of the president's salary, the plaintiff, if cognizant of such agreement at the time he accepted the office of president, was bound to look to the construction company for his salary, and could not hold the defendant company liable therefor, unless he had given notice to the defendant company at the time he accepted office of his intention to look to the railway company for payment of his salary, or if he acted in such a way as to lead the directors of the railway company to believe that he intended to make no charge against the defendant company, then he cannot now be permitted to make a charge. So much of these requests as relate to the service by plaintiff being gratuitous will be passed over until we come to the eleventh exception, with which it is more properly connected.

As we have already indicated, we do not see how the contract between the defendant company and the construction company, whereby the latter undertook to pay the salary of the president, can affect the question in this case. The plaintiff was no party to that contract, which was made long before the plaintiff was elected president, and though he doubtless knew of that contract, he, as an individual, was in no way bound by its terms, and could not be unless it was shown that he had agreed to look to the construction company alone for his salary, which is not pretended. If he accepted the office of president, either under a special contract as to his salary or under an implied agreement that he was to be paid whatever his services might be reasonably worth, he certainly has a right to recover from the company which employed him, either the amount stipulated for or the

amount which his services were reasonably worth, as the case might be. Surely the fact that his employer had obtained from another an obligation to pay such amount, could not possibly affect the plaintiff's right to recover from the party who employed him. The utmost effect that contract could have, would be to give the railway company a claim against the construction company for any amount which the former might have to pay its president for his salary, in case of the failure of the latter to pay the same; but it certainly cannot have the effect of relieving the railway company from liability to pay its president's salary, unless there was some agreement to that effect with the president.

The eleventh exception complains that the comments of the Circuit Judge upon defendant's seventh request were calculated to confuse the jury. That request, together with the latter part of the sixth request just referred to, relate to the question whether plaintiff's services were gratuitous at the time they were rendered. An examination of the judge's charge will show that his remarks to the jury upon this subject were free from exception. He did not instruct the jury that there must be *"express evidence"* that plaintiff intended to serve the defendant company gratuitously, and it does not seem to us that there is anything in the language used which would properly warrant, or even would be likely to lead the jury to, such an inference.

The first part of the twelfth exception complains that the Circuit Judge erred in submitting to the jury the question whether the amount of the salary of the president was fixed previous to or during the administration of Gov. Hagood, the predecessor of plaintiff, when there was no evidence to that effect. In the first place, we do not see that any such question was left to the jury, as the judge simply called the attention of the jury to the testimony as to what occurred in reference to the payment of the president's salary during the administration of Gov. Hagood, which had been relied on by plaintiff as a circumstance tending to show the amount fixed as the salary of that office. And, in the second place, if the judge misstated the testimony to the jury, the remedy was by a motion for a new trial before the Circuit Court, and not by appeal to this court. *State* v. *Jones*, 21 S. C., 596.

The only remaining question is that raised by the 5th and the latter part of the 12th exception, as to whether the Circuit Judge violated the constitutional provision prohibiting a charge upon the facts. The specifications of the particular portion of the charge in the 5th exception do not show that the judge either expressed or intimated any opinion as to any question of fact which the jury were called upon to determine. There was some testimony tending to show that the salaries of railway presidents were sometimes high, and what was said upon tnis subject was more by way of illustration than as indicating any opinion on the part of the judge. *Fitzsimmons* v. *Guanahani Company,* 16 S. C., 192; *Rembert* v. *Railway Co.*, 31 *Id.*, 309. The specification contained in the latter part of the 12th exception is a sentence extracted from the charge, which when read in its proper connection, as it should be, affords no ground whatever for the complaint made.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.